**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL LEESE, ASHLEY LEESE, and A. LEESE, I. LEESE, and A.K. LEESE, their minor children, | CIVIL NO. 11-5091(NLH)(AMD) |
| Plaintiffs, | **OPINION** |
| v. | |
| LOCKHEED MARTIN, | |
| Defendant. | |

**APPEARANCES:**

JULIE A. LAVAN
11 EAST MAIN STREET
2ND FLOOR
MOORESTOWN, NJ 08057

      On behalf of plaintiffs

ROBERT L. EBBY
ROBERT ANDREW WIYGUL
HANGLEY ARONCHICK SEGAL & PUDLIN
ONE LOGAN SQUARE
27TH FLOOR
PHILADELPHIA, PA 19103

      On behalf of defendant

**HILLMAN**, District Judge

      This case involves allegations of environmental contamination. Presently before the Court is defendant's motion to dismiss all claims in plaintiffs' complaint. For the reasons expressed below, defendant's motion will be denied.

## BACKGROUND[1]

On June 7, 2003, plaintiffs, Michael and Ashley Leese, purchased a new-construction home in Moorestown, New Jersey in a development called Wexford at Moorestown. The site is across the street from defendant, Lockheed Martin Corporation. Lockheed Martin's property had been owned until 2002 by its predecessor-in-interest, Martin Marietta Company.

In the agreement of sale for the new home, plaintiffs were informed that the ground water beneath the southeastern quarter of the Wexford site had been contaminated by trichloroethylene ("TCE")[2] through migration from the adjacent Lockheed Martin

---

[1] The background facts come from plaintiffs' amended complaint and the documents attached to their complaint.

[2] The U.S. Environmental Protection Agency explains:

TCE has been produced commercially since the 1920s in many countries by chlorination of ethylene or acetylene. Its use in vapor degreasing began in the 1920s. In the 1930s, it was introduced for use in dry cleaning. This use was largely discontinued in the 1950s and was replaced with tetrachloroethylene [PCE] (ATSDR, 1997c). More recently, 80-90% of TCE production worldwide is used for degreasing metals (IARC, 1995a). It is also used in adhesives, paint stripping formulations, paints, lacquers, and varnishes (SRI, 1992). A number of past uses in cosmetics, drugs, foods, and pesticides have now been discontinued including use as an extractant for spice oleoresins, natural fats and oils, hops, and decaffeination of coffee (IARC,1995a), and as a carrier solvent for the active ingredients of insecticides and fungicides, and for spotting fluids (ATSDR, 1997c; WHO, 1985).

U.S. EPA. (U.S. Environmental Protection Agency). (September 2011). *Toxicological review of Trichloroethylene (CASRN 79-01-6)*

property.  The New Jersey Department of Environmental Protection ("NJDEP") had found Lockheed Martin to be the responsible party, and had approved a remediation plan on the Lockheed Martin site to treat the TCE contamination on its property.  The NJDEP determined that because of Lockheed Martin's remediation efforts on its property, no remediation was necessary on the Wexford site.  The NJDEP indicated that a letter of "No Further Action" would be issued.

The NJDEP never issued that letter, however, and in September 2008, the NJDEP informally requested that Lockheed Martin conduct vapor intrusion testing on residential properties across the street.  In December 2008, Lockheed Martin conducted near slab (within 10 feet from foundation) and subslab (beneath the basement) soil vapor testing at plaintiffs' property.  On January 12, 2009, plaintiffs were informed by Lockheed Martin that their testing did not detect TCE, but did detect levels of tetrachloroethylene

---

*in support of summary information on the Integrated Risk Information System (IRIS)*. (EPA/635/R-09/011F), at 2-2, available at http://www.epa.gov/iris/toxreviews/0199tr/0199tr.pdf.  In consideration of this motion to dismiss, the Court properly takes judicial notice of U.S. EPA reports.  See Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999); Animal Science Products, Inc. v. China Nat. Metals & Minerals Import & Export Corp., 596 F. Supp. 2d 842, 855 (D.N.J. 2008) (citing Fed. R. Evid. 201(b)) (explaining that pursuant to or the purposes of final disposition, either on merits or on procedural grounds, a federal court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

("PCE")[3] in the three samples taken, with two showing levels in excess of NJDEP screening levels.  Subsequent indoor air testing of plaintiffs' house a few weeks later revealed no detectable level of TCE in the home, but PCE was detected in the basement and first floor, with the basement level registering above NJDEP screening levels.

Plaintiffs claim that despite installation of a filtration system on Lockheed Martin's property, the Lockheed Martin property continues to test above the legal level for TCE and PCE. Plaintiffs claim that these continued elevated levels of TCE and PCE indicate an ongoing discharge of these chemicals by Lockheed Martin.  Plaintiffs further claim that their property is

_____

[3] The U.S. Department of Environmental Protection explains:

Tetrachloroethylene [PCE] is a widely used solvent that is produced commercially for use in dry cleaning, textile processing, and metal-cleaning operations.  It has the following use pattern: 55% as a chemical intermediate, 25% for metal cleaning and vapor degreasing, 15% for dry cleaning and textile processing, and 5% for other unspecified uses.

Tetrachloroethylene has been detected in ground water and surface water as well as in air, soil, food, and breast milk. The primary exposure routes of concern are inhalation of vapor and ingestion of contaminated water.

U.S. EPA (U.S. Environmental Protection Agency). (February 2012). *Toxicological review of Tetrachloroethylene (Perhloroethylene) (CASRN 127-18-4) in support of summary information on the Integrated Risk Information System (IRIS)*. (EPA/635/R-08/011A), at 2-1, available at http://www.epa.gov/iris/toxreviews/0106tr.pdf.

continually being contaminated because it is in the path of the ground water flow from, and is within the "calculated plume" of, Lockheed Martin.

Plaintiffs claim that these carcinogenic chemicals have damaged not only their home's value, but also caused them serious negative health effects, including two children who refused to eat as babies, fell off the growth charts, and are currently below the 10th percentile for height and weight for their ages, and a third child who has developmental issues.  Plaintiffs have also suffered from the severe stress of living on a contaminated property.

On July 26, 2011, plaintiffs filed a complaint in New Jersey Superior Court, Burlington County, against Lockheed Martin,[4] alleging violations of the New Jersey Spill Act, the New Jersey Water Pollution Control Act, the federal Resource Conservation and Recovery Act, and New Jersey common law for nuisance, trespass, strict liability, and negligence.  Lockheed Martin removed plaintiffs' case to this Court, and soon thereafter filed a motion to dismiss plaintiffs' complaint in its entirety.  Plaintiffs filed an amended complaint, and Lockheed Martin again moved to dismiss plaintiffs' complaint.[5]  Plaintiffs have opposed the motion.

---

[4] Plaintiffs also filed suit against the homebuilder, but due to its bankruptcy proceedings, those claims were dismissed.

[5] The filing of plaintiffs' amended complaint mooted Lockheed Martin's first motion to dismiss.  The Order accompanying this Opinion will reflect that procedural development.

**ANALYSIS**

**A.    Jurisdiction**

Two bases for subject matter jurisdiction exist in this case. Plaintiffs' claim under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a), gives this Court jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties[6] and the amount in controversy exceeds $75,000.

**B.    Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all

---

[6] Plaintiffs are citizens of New Jersey, and Lockheed Martin is a citizen of Maryland, where it is incorporated and has its principal place of business.

the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal

7

conclusions.  <u>Fowler</u>, 578 F.3d at 210 (citing <u>Iqbal</u>, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  <u>Id.</u>; <u>see also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  <u>Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.</u>, 181

F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

### C.  Analysis

Lockheed Martin argues in its motion to dismiss that plaintiffs' claims wholly fail to allege sufficient facts to hold it liable for any claims that it discharged TCE and PCE in the past, is currently discharging these chemicals, or how these chemicals have purportedly come from Lockheed Martin's property onto their property.  Lockheed Martin also argues that most of plaintiffs' claims are barred by the applicable statute of limitations because of when plaintiffs became aware of their alleged claims.  In opposition, plaintiffs argue that their pleadings are sufficient to maintain all their claims, and that the discovery rule, the continuing tort doctrine, or both, save their claims from any statute of limitations.

The facts alleged by plaintiffs in their complaint and attached documents relevant to the discharge of chemicals are:

9

**For TCE**

- TCE is a known carcinogen.

- As of June 2003, TCE was in the ground water beneath plaintiffs' property, and the NJDEP determined that the TCE migrated from Lockheed Martin's property.

- Plaintiffs knew that TCE was in the ground water below their property when they purchased their house.

- Despite the remediation underway since at least 1995, and despite improved concentrations of TCE in the water, Lockheed Martin's property continues to test above the legal level of TCE.

- Continued levels of TCE on Lockheed Martin's property indicates an ongoing discharge.

- TCE remains in the ground water under plaintiffs' home.

- Plaintiffs are in the path of the ground water flow and within a calculated plume of Lockheed Martin's property.

- As of December 2008 and January 2009, no TCE was found in the soil or air in and around plaintiffs' home.

**For PCE**

- PCE is a known carcinogen.

- Plaintiffs did not know about the presence of PCE on their property when they bought their home.

- As of December 2008, three soil samples taken from under and near plaintiffs' basement revealed the presence of PCE, with two showing levels in excess of NJDEP screening levels.

- As of January 2009, indoor air testing of plaintiffs' house found PCE in the basement and first floor, with the basement level registering above NJDEP screening levels.

- Lockheed Martin's property continues to test above the legal level for PCE.

- Continued levels of PCE on Lockheed Martin's property indicates an ongoing discharge.

- Plaintiffs are in the path of the ground water flow and within a calculated plume of Lockheed Martin's property.

Accepting as true these facts alleged by plaintiffs, the Court finds that at this stage of the litigation plaintiffs have stated sufficient facts to give Lockheed Martin fair notice of their claims, and to raise a reasonable expectation that discovery will reveal evidence to support the elements of all their claims. Additionally, it is not clear from the face of their complaint that any applicable statute of limitations bars their claims.[7]

---

[7] In its motion to dismiss, Lockheed Martin has challenged the validity of plaintiffs' claims one-by-one. Aside from a standing argument to be addressed infra, the crux of defendant's motion to dismiss each of these claims is plaintiffs' failure to allege enough facts to make out a plausible claim that Lockheed

In its motion to dismiss, however, Lockheed Martin questions all of plaintiffs' theories, and argues that plaintiffs' claims are too vague.  With regard to TCE, it argues that even though TCE is in the ground water beneath plaintiffs' home, it has not and cannot cause plaintiffs harm.  Moreover, Lockheed Martin argues that it is not responsible for past TCE contamination even if the ground water is still contaminated.  Lockheed Martin also challenges plaintiffs' contention that it continues to discharge TCE into the ground water.  With regard to PCE, Lockheed Martin argues that the PCE affecting plaintiffs' soil and air has not come from the ground water, and, therefore, it has not, and is not, coming from its

---

Martin has discharged, continues to discharge, or is the party responsible for the discharge of TCE and PCE onto Plaintiffs' property.  As we conclude in the body of this Opinion, whether asserted as claims pursuant to the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 (Count One), and the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A-31 (Count Two), both brought pursuant to the New Jersey Environmental Rights Act, N.J.S.A. 2A:35A-4; the federal Resource Conservation and Recovery Act, 42 U.S.C. § 6921 (Count Three), or under state common law claims of Private Nuisance (Count Four), Trespass (Count Five), Strict Liability (Count Six), or Negligence (Count Seven), plaintiffs have pleaded sufficient facts to allow all of these claims to go forward at this time.

As for Defendant's assertion that Plaintiffs lack standing to assert a claim under the Water Pollution Control Act, that assertion is only half-correct.  While no private action per se exists under that Act, here Plaintiffs merely assert such a violation as a predicate to their claim under the New Jersey Environmental Rights Act, N.J.S.A. 2A:35A-4.  Accordingly, this legal defense will turn, as will the other claims, on Lockheed's role, if any, in any past or continuing unlawful discharge. Thus, discovery will affect both the viability of plaintiffs' claims, as well as the validity of defendant's standing and statute of limitations defenses.

property, but from some other source.

Overall, Lockheed Martin argues that it is properly remediating the TCE issue in consultation with the NJDEP, and because plaintiffs have not articulated what else it should be doing with regard to TCE (or PCE), plaintiffs are not entitled to injunctive or any other relief.  It also contends that because plaintiffs have been aware of TCE since 2003, and PCE since January 2009, many of their claims are time-barred, and plaintiffs' general claim that "continued elevated levels of PCE and TCE on [plaintiffs'] Property indicate an ongoing discharge" cannot save their claims on a theory of a continuing tort.

Initial discovery exchanges will soon confirm or refute the validity of plaintiffs' primary contention regarding the ongoing discharge of TCE and PCE from the Lockheed Martin property.  Both parties will need to reveal if or when these chemicals have been detected on their properties or in the ground water beneath their properties.[8]  That data will inform whether plaintiffs can (1)

_____

[8] In its brief, Lockheed Martin contends that plaintiffs have not and cannot allege that the presence of TCE in the groundwater beneath plaintiffs' home has exposed them to TCE. (Def. Br. at 25 n.14.)  This contention is incorrect, in that plaintiffs do allege that TCE is in the ground water beneath their home and they have been damaged by it.  Moreover, the Court notes that "TCE can be released to indoor air from use of consumer products that contain it (i.e., adhesives and tapes), vapor intrusion (migration of volatile chemicals from the subsurface into overlying buildings) and volatilization from the water supply."  U.S. EPA. (U.S. Environmental Protection Agency). (September 2011). *Toxicological Review of Trichloroethylene, at*

sustain their claim of ongoing discharge, (2) avoid the tolling of various statutes of limitations, and (3) support their contention that Lockheed Martin is the source of TCE and PCE.[9]  Of course, beyond these basic findings, plaintiffs maintain the burden of proving causation, damages, and the other elements of their claims, and should discovery reveal evidence to support what Lockheed Martin has argued in its current motion, it is free to file a properly supported motion for summary judgment.  To preclude plaintiffs from pursuing their case, however, where information to potentially support their claims is only known by the defendant,

_____

*2-10.*  Of course, it is plaintiffs' burden to prove their claims regarding TCE contamination, including the timing of their exposure and the causal connection to their alleged injuries and damages.

   [9] In order to prove that Lockheed Martin's discharge of the chemicals is ongoing, and constitutes a continuing tort in order to avoid the running of any applicable statute of limitations, plaintiffs will have to show that "the ultimate cause of the harm" has not been removed.  Russo Farms, Inc. v. Vineland Bd. of Educ., 675 A.2d 1077, 1086 (N.J. 1996) (explaining that "a nuisance is continuing when it is the result of a condition that can be physically removed or legally abated. In such a case, it is realistic to impute a continuing duty to the defendant to remove the nuisance, and to conclude that each new injury includes all elements of a nuisance, including a new breach of duty. On the other hand, when the nuisance cannot physically be removed, it is unfair to impose a continuing, impossible to fulfill duty to remove the nuisance; when a court will not order defendant to abate the nuisance, it is inconsistent to recognize a duty to do so" (citations omitted)).  Lockheed Martin has asked the Court to find, on the face of plaintiffs' pleadings, that any chemical discharge from its property is not its responsibility because it is only consequential continuing damage and not a continuing tort.  As explained above, the Court cannot make that determination at this time.

14

and where sufficient facts have been pled to raise plausible claims, would be too strict an application of the motion to dismiss standard.

Consequently, Lockheed Martin's motion to dismiss plaintiffs' complaint must be denied.  An appropriate Order will be issued.


Date: April 11, 2012                     s/ Noel L. Hillman
                                    NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey

15