IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL LEESE, et al., | : | HON. JEROME B. SIMANDLE |
| Plaintiffs, | : | Civil No. 11-5091 (JBS/AMD) |
| v. | : | |
| LOCKHEED MARTIN, | : | **OPINION** |
| Defendant. | : | |

APPEARANCES:

Julie A. LaVan, Esq.
Alaina A. Gregorio, Esq.
Andrew Chigounis, Esq.
LAVAN LAW
11 East Main Street, 2d Floor
Moorestown, NJ 08057
    Attorneys for Plaintiffs

Robert L. Ebby, Esq.
Robert A. Wiygul, Esq.
Steven T. Miano, Esq.
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square, 27th Floor
Philadelphia, PA 19103
    Attorneys for Defendant

**SIMANDLE, Chief Judge:**

**I. Introduction**

    Plaintiffs Michael and Ashley Leese, and their minor children, as well as Jay and Raquel Winkler, bring this suit against Defendant Lockheed Martin for violations of federal and state environmental laws, as well as common law torts. Plaintiffs allege that Defendant is discharging toxic substances from its facility in Moorestown, N.J., and contaminating Plaintiffs'

properties, which sit across the street from the facility. Plaintiffs seek injunctive relief ordering Defendant to remediate their properties to state and federal standards and monetary damages for the diminution of property value and physical injuries to the Leese children.

This matter is before the Court on Defendant's motion for partial summary judgment as to the common law torts, Counts V-VIII. [Docket Item 87.] Defendant argues it is entitled to partial summary judgment because Plaintiffs have failed to produce competent evidence of injury. Specifically, Plaintiffs failed to produce an expert report to prove medical causation (for personal injuries allegedly sustained by the Leese children) and failed to prove a loss in property value. The key questions for the Court are (1) whether Plaintiffs have produced evidence sufficient to show medical causation, (2) whether an expert is needed to testify as to property value diminution, and (3) if so, whether Plaintiffs' realtor witnesses may be qualified as experts at this late date or if Plaintiffs may be permitted to submit an expert report from a new appraiser.

For the reasons explained below, the Court will grant the motion in part and defer adjudication in part. Evidence of both bodily injury and the quantum of diminished property value is lacking; summary judgment will be granted as to Plaintiffs' personal injury claim, but Plaintiffs will be granted 30 days to

furnish a new expert report on the value of their properties since it is presently apparent that evidence exists to find that Defendant's discharge of toxic chemicals has caused harm to Plaintiffs' properties, and, in fairness, Plaintiffs should have the opportunity to submit expert opinion evidence of the amount of such harm.

## II. Background

### A. Facts

Defendant Lockheed Martin owns a research, development, and manufacturing facility on Borton Landing Road in Moorestown, N.J. (Statement of Undisputed Material Facts ("SMF") [Docket Item 88] ¶ 1.)  Defendant acquired the facility in 1995 when it merged with Martin Marietta Corporation, which had owned the facility since 1993. (Id.; Counter Statements of Undisputed Material Fact ("CSF") [Docket Item 97-1] ¶¶ 2-3.)

Plaintiffs Michael and Ashley Leese bought a property in a residential development on the opposite side of Borton Landing Road, at 5 Victoria Court, in 2003. (SMF ¶¶ 2, 4.) Plaintiffs Jay and Raquel Winkler bought the adjacent residential property, at 7 Victoria Court, the same year. (SMF ¶ 3.) Plaintiffs have admitted that at the time they signed Agreements of Sale for their respective properties, they were aware the groundwater under their properties contained trichloroethylene ("TCE"), a volatile organic compound ("VOC") frequently used in metal

cleaning operations.[1] (Pl.'s Resp. to Def.'s Requests for
Admission [Docket Item 87-7] ¶¶ 6-7; Pl. Ex. 9 [Docket Item 97-
12] at 1; see also Def. Ex. 2 at 12 [Docket Item 87-5] & Def. Ex.
3 at 15 [Docket Item 87-6] (Agreements of Sale disclosing TCE
ground water contamination in the "southeastern quarter of the
Wexford at Moorestown site," the portion of the residential
development where Plaintiffs own property).)

Shortly after the Leeses moved to 5 Victoria Court, their
first child, A.L., was born.[2] (CSF ¶ 54.) According to the
Leeses, A.L. "refus[ed] to eat and consume necessary nutrition"
as an infant.[3] (Leese Decl. ¶ 6.) A.L. was in the lower tenth
percentile for height and weight among children her age. (Id. ¶
7.) The Leeses consulted a nutritionist, who found that A.L.
"presents adequately nourished" and indicated no food allergies
or intolerances. (Def. Reply Ex. 8.) The nutritionist opined
"[i]t appears that she has some behavior issues related to

_____

[1] Plaintiffs admitted in their response to Defendant's
request for admissions that they "were aware no later than [the
date of purchase], that the groundwater at [their address at]
Victoria Court, Moorestown, New Jersey, contained TCE." (Def. Ex.
4 ¶¶ 6-7.) Now, however, Plaintiffs claim in their response to
the SMF that while they might have been aware of contamination in
certain lots in the development, they were not aware of
contamination of groundwater on their lots, specifically.(Pl.
Resp. to SMF [Docket Item 97-1] ¶ 5.)

[2] The minor children are identified by their initials.

[3] All of the facts related to the alleged ailments of the
Leese children are drawn from the Declaration of Michael and
Ashley Leese, Docket Item 98, unless otherwise noted.

eating," and recommended the Leeses avoid certain behaviors
"catering to her." (Id.) The Leeses stated that "nothing changed"
related to her eating habits after the consultation. (Leese Decl.
¶ 10.) They assert that A.L. "developed speech issues" and
remains "one of the smallest girls in her class" and "works at a
much slower pace than her peers." (Id. ¶ 12.)

The Leeses' second child, I.L., was diagnosed with the flu
at two weeks old, after appearing lethargic and unresponsive.
(Id. ¶ 14.) I.L. also had issues feeding and "suffered from
clogged tear ducts, swollen eyes, and discoloration, as well as
rashes on her face and body." (Id. ¶ 15.) The Leeses assert that
I.L. remains in the tenth percentile for height and weight and
has trouble concentrating in school. (Id. ¶¶ 18-19.) The Leeses'
third child, A.K.L., and was "small and thin"[4] and "developed
speech issues." (Id. ¶¶ 21-23.) A.K.L. was screened for autism,
but was not found to be autistic; rather, he was "developmentally
delayed." (Id. ¶ 25.)

None of the doctors ever made any statements or raised
questions linking the children's ailments to TCE or
tetrachloroethylene (also known as perchloroethylene or "PCE," a

---

[4] According to deposition testimony of Ashley Leese, A.K.L.
and I.L. each were at least eight pounds at birth, and A.L. was
seven pounds, 14 ounces. (Def. Reply Ex. 7.) These birth weights
are in fact "normal" as Mrs. Leese conceded at her deposition.
(A. Leese Dep. 17:11-19:4, 106:10-16, 133:19-20, 255:7-256:8 (Ex.
D-8).)

VOC often used in dry-cleaning and metal-cleaning products and for textile processing (Pl. Ex. 10 [Docket Item 97-13] at 1)), in part because Mr. and Mrs. Leese never mentioned possible "chemical exposure[,] because prior to 2008, they had no knowledge that PCE was in their groundwater and soil." (CSF ¶ 62; see also id. ¶¶ 72, 86.) In any event, as of 2013, there is still no medical opinion that raises a question, let alone states, that any medical or developmental condition of any Leese child is likely related to exposure to TCE or PCE. Plaintiffs concede this absence of any medical professional's opinion. (Pl. Br. at 20.)

Defendant and the New Jersey Department of Environment Protection ("NJDEP") had been working together since the 1990s to monitor the soil, groundwater and air for contaminants on and near the facility.[5] In December 2008, the NJDEP requested that Defendant conduct precautionary soil vapor testing at various nearby properties, including those owned by Plaintiffs. (SMF ¶ 6.) The testing did not reveal TCE at the Leeses' property, but detected the presence of PCE. (SMF ¶ 8; Pl. Resp. to SMF ¶ 8.) The concentration of PCE was below the NJDEP screening level.[6]

---

[5] Whether Defendant caused the contamination on Plaintiffs' properties is a disputed fact, but the answer is not dispositive to this motion, in which the Court assumes Defendant was the source of contamination.

[6] Screening levels set by the NJDEP dictate when certain concentrations of compounds require additional testing. (Def. Br. at 7.) The screening levels do not necessarily indicate levels at which compounds become hazardous to health.

(SMF ¶ 8; Pl. Resp. to SMF ¶ 8.) PCE also was detected at the Winklers' property at levels below the NJDEP screening level, leading the Department to conclude that "the vapor intrusion pathway was not complete at the time of sampling" and that no additional monitoring of the Winklers' home was warranted at that time. (Def. Ex. 7 [Docket Item 87-10] at 1.)

Defendant conducted additional testing of the Leeses' properties in January and April 2009. (SMF ¶ 9.) The Leeses commissioned their own environmental testing in December 2008 and November/December 2012. (Id. ¶ 10.) The results of all the testing have been compiled by Defendants in Exhibit 15 [Docket Item 87-18], and reveal the occasional presence of TCE and PCE.[7] More than half of the samples tested in 2008, 2009 and 2012 (approximately 31 of 55 samples), yielded a "not detected" result for either TCE or PCE, according to Defendants' compilation. (Def. Ex. 15.) One 2008 test at the Leese property indicated a

---

Although Plaintiffs appear to concede that PCE was "below the NJDEP Screening Level," elsewhere Plaintiffs argue that "following December 2008 sampling at the Leese Property, analytical results yielded" a concentration of PCE above the applicable screening level. (Pl. Resp. to SMF ¶ 11.)

[7] Plaintiffs state that "Defendant has not provided a true and correct compilation of the results of all of the testing for TCE and PCE . . . . In fact, the compilation contains errors pertaining to the appropriate current NJDEP screening level for the compounds TCE and PCE." (Pl. Resp. to SMF ¶ 11.) Plaintiff does not mention, and therefore does not expressly object to, the accuracy of the reported test results in the exhibit for TCE and PCE levels.

concentration of PCE at 6.5 parts per billion by volume ("ppbv"), which exceeded the applicable screening level at the time of 5 ppbv. (Def. Ex. 5.) However, in March 2013, the NJDEP updated its Vapor Intrusion Screening Levels, which last had been changed in March 2007, based on "risk-based information included in the United States Environmental Protection Agency (USEPA) Regions 3, 6, and 9 November 2012 Regional Screening Levels Table for Chemical Contaminants at Superfund Sites . . . ." (Def. Ex. 11 [Docket Item 87-14] at 1.) These new screening levels adjusted upward the concentrations of TCE and PCE that warranted additional testing. (Def. Ex. 10 [Docket Item 87-13].) Plaintiffs concede that none of the test results collected at either of their properties ever found TCE or PCE in concentrations that exceeded the 2013 screening levels for those compounds, although Plaintiffs point to the above result of 6.5 ppbv for PCE to show that the concentration of PCE at one time exceeded the then-applicable screening level. (Pl. Resp. to SMF ¶ 11.) Defendants call that one sample "anomalous," and argue that "indoor air sampling performed at the Leeses' property in December 2008 (conducted by Plaintiffs) and April 2009 . . . either detected no PCE whatsoever or detected a trace amount well below even the old screening level." (Def. Br. at 7 n.6.)

In May 2012, the Leeses moved to a different house in Moorestown. (CSF ¶ 97.) They rented the property at 5 Victoria

Court to a couple pursuant to a nine-month lease. (Id. ¶ 98) As of the filing of this motion, the Winklers still lived at 7 Victoria Court. (Id. ¶ 99.)

**B. Procedural history**

The Leeses filed the original Complaint in state court in July 2011, and Defendant removed the action to this Court. [Docket Item 1.] The Leeses filed a Second Amended Complaint ("SAC"), adding the Winklers as Plaintiffs. [Docket Item 30.] The SAC brings claims under the Spill Compensation and Control Act, N.J.S.A. § 58:10-23.11, et seq., the Water Pollution Control Act, N.J.S.A. § 58:10A-1, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq., and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq. The counts at issue in this motion are brought under common law for private nuisance (Count V), trespass (Count VI), strict liability (Count VII), and negligence (Count VIII). These counts seek "actual damages" for "loss of property value" on behalf of the Leeses and Winklers and actual damages for "bodily injuries" to the Leese children. (SAC at 15-20 ¶¶ (a)-(d); CSF ¶ 96.) Plaintiffs have admitted that TCE and PCE are the only substances on which their claims are based and that the Leese children are the only plaintiffs asserting personal injury claims. (Def. Ex. 4 at ¶¶ 1-2; Pl. Resp. to SMF ¶¶ 13-14.)

## C. **Expert testimony**

During an October 2012 discovery conference before Magistrate Judge Ann Marie Donio, Plaintiffs' counsel Julie A. LaVan, Esq., acknowledged that in order to prove Plaintiffs' case, they would have to provide expert testimony. (Def. Ex. 21 [Docket Item 87-24] at 10:12-18.) Plaintiffs still contend that expert testimony is required on the questions of whether gas vapor intrusion was caused by Lockheed Martin and, if so, whether it caused damage to Plaintiffs. (CSF ¶¶ 101-102.)

Judge Donio entered an Amended Scheduling Order on April 8, 2013, stating

> All expert reports and expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2) on behalf of plaintiffs shall be served upon counsel for defendant not later than April 30, 2013. . . . No expert opinion testimony shall be admitted at trial with respect to any witness for whom this procedure has not been timely followed.

[Docket Item 77.]

Plaintiffs concede that they "have decided 'not to put forth a medical or property valuation expert for [Defendant] to rebut.'" (CSF ¶ 107, quoting a letter from Plaintiff's counsel Alaina A. Gregorio, Esq., to Judge Donio [Docket Item 87-31] at 2.) On April 30, 2013, Plaintiffs timely served upon Defendant one expert report by professional geologist David B. Farrington.[8]

─────────

[8] Plaintiffs also submitted two letters from an engineer, but admit that "these letter reports are inclusive of data 'relied on by Plaintiffs' expert Dave Farrington' only." (CSF ¶ 112.) Plaintiffs state that they "did not intend to characterize the

(Def. Ex. 24 [Docket Item 87-27]; CSF ¶ 109.) In the report, Mr. Farrington opines that TCE, PCE, and other VOCs migrated from Defendant's property to groundwater beneath the development, including the Plaintiffs' properties. (Id. at 8.) Farrington offers other opinions about the presence of TCE and PCE. (Id. at 8-9.) In the report, Farrington makes only four statements about the hazardous nature of the compounds:

> Human exposure to PCE affects developmental, neurological, and respiratory systems. PCE is reasonably anticipated to be a human carcinogen. (Agency for Toxic Substances and Disease Registry -- attached)

(Id. at 7.)

> Human exposure to TCE affects developmental and neurological systems. TCE is reasonably anticipated to be a human carcinogen. (Agency for Toxic Substances and Disease Registry -- attached)

(Id.)

> The United States Environmental Protection Agency (EPA) characterizes TCE as carcinogenic to humans and as a human non-cancer health hazard.

(Id.)

> Based on information from the Agency for Toxic Substances and Disease Registry, exposure to PCE and/or TCE can affect developmental, neurological, and/or respiratory systems in humans.

---

letter reports . . . as expert reports" and "confirm that the report from Mr. Farrington is Plaintiffs' only expert report." (Pl. Resp. to SMF ¶ 18.) Plaintiffs offer the testimony of realtors Nancy Coleman and Dana Krisanda, about property valuation, as lay testimony. (CSF ¶ 106.)

(Id. at 9.)

Mr. Farrington has no medical training. (Farrington c.v. [Docket Item 87-30] at 1.) He did not examine the Leese children. He offered no opinions about the cause of the Leese children's ailments.

### D. **Property valuation testimony & documentation**

Plaintiffs state that "Ms. Coleman and Krisanda, of Weichert Realtors, will attest to housing market trends in Moorestown and general matters pertaining to Plaintiffs' properties, as disclosed through Plaintiffs Supplemental Discovery Responses Dated January 4, 2013." (CSF ¶ 108.) In the supplemental response, Plaintiffs indicated that Ms. Coleman would testify "about the value of the Leese and Winkler Properties; the renter value versus sale value of the properties; and housing market trends in Moorestown, New Jersey." (Pl. Ex. 18 [Docket Item 97-21] at 14 ¶ 6.) Ms. Krisanda would testify about essentially the same topics. (Id. at 14 ¶ 5.)

In opposition to the present motion, Plaintiffs offer one page of deposition testimony from each of the realtors. Ms. Krisanda testified that she never tried to estimate the value of the property[9] "with the contamination" and admitted that she

_____

[9] It is not clear from the excerpt to which property Ms. Krisanda refers. Defendant, however, provides a longer excerpt which reveals that Ms. Krisanda was discussing a completely different property on Park Avenue in Moorestown. (Reply. Ex. 11 at 82:4-86:18.)

would not have known how to do that. (Krisanda Dep [Pl. Ex. 19, Docket Item 97-22] at 86:5-11.) She added, on the value of the property: "as I told my buyer, you can't buy this with contamination, and he knows that. He's a builder and he knows what he's doing. But, I mean, I guess it would be zero, because I would say, don't buy it." (Id. at 86:11-18.) This statement, however, concerned a property on Park Avenue in Moorestown, N.J., not either one of the Plaintiffs' properties. (Reply Ex. 11 at 82:4-86:18.) Underground gas and oil tanks had ruptured and leaked, and that property required site remediation. (Id. at 84:1-11.)

In response to a question asking if "the house has zero sale value," Ms. Coleman testified: "Like they say in real estate, there's a buyer for everything, and good luck finding a buyer for that one." (Coleman Dep. [Pl. Ex. 20, Docket Item 97-23] at 183:8-13.) She added: "if the Leeses asked me to list that house for sale, I'd say no, thank you." (Id. at 183:17-19.) When asked "you wouldn't list it even?", she replied: "I would not. I wouldn't waste my time." (Id. at 183:20-22.)

Defendant, in reply, supplements the record with more deposition testimony from the realtors. Ms. Coleman, when asked if she had "an opinion of what the value of the Leese property is," replied, "I do not." (Coleman Dep. [Reply Ex. 10] at 240:4-7.) She testified she had not undertaken, nor had she been asked,

to appraise the property. (Id. at 242:13-23.) She testified she did not know which chemicals allegedly contaminated the property or at what levels those chemicals were detected. (Id. at 319:10-24.) She testified that even if she knew the specific levels of chemicals detected, she did not feel qualified to render an opinion about the effect on the property of those chemicals. (Id. at 337:13-20.)

Ms. Krisanda, likewise, testified that she did not recall ever expressing an opinion about the value of the Leese property after the testing was done in 2008 and that she didn't "know anything about the chemicals." (Krisanda Dep. [Reply Ex. 11] at 192:10-23.) She testified that in 2005, she valued the Leeses' property in a deal that ultimately was not consummated. (Id. at 192:1-9; Reply Ex. 12 at 279:10-281:4.) She did not know whether the value of the Leeses' property had been diminished. (Reply Ex. 11 at 192:19-193:1.) She further testified she had never attempted to appraise the Winklers' property. (Id. 196:16-19.) She testified that it was fair to say she was not in a position to render an informed opinion about the value of either of the Plaintiffs' properties. (Reply Ex. 12 at 226:14-20.) Ms. Krisanda has never endeavored to estimate the value of a property with chemical contamination (Reply Ex. 11 at 191:15-20), and she was aware of no methods that could be used to determine the value of a contaminated property. (Id. at 87:17-22.)

At oral argument, Plaintiffs' counsel referenced for the first time a Burlington County tax assessment of the Leeses' property which showed a recent reduction in the assessment from $533,600 to $285,000. (Leese Supplement [Docket Item 105] at 103.) Three days after oral argument, Plaintiffs submitted a "tax appraisal package" of documents as a supplement to the record.[10] According to the documents, the Leeses appealed their assessment of $533,600. On the petition of appeal form, in lieu of listing comparable properties, Mr. Leese wrote:

> No real comparables as my house at 5 Victoria Ct, Moorsetown, NJ is unsaleable as it is contaminated with carcinogenic (cancer causing) chemicals in the soil, underneath the house, and vapors inside the house. These carcinogenic chemicals are coming from Lockheed Martin. We have multiple soil and vapor testing results, which confirm the presence of these chemicals. Complete remediation is needed. We currently have a lawsuit against Lockheed Martin. Real estate value is ZERO.

(Leese Supplement at 108.) The revised assessment of the property, at $285,000, did not contain any opinion or explanation for the reduction by the assessor. (Id. at 103.)

## III. Standard of review

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

---

[10] Plaintiffs did not mark the assessment as an exhibit at oral argument or move to supplement the summary judgment record. Nor did Plaintiffs' counsel submit a Rule 56(d) affidavit or declaration requesting the Court delay decision on the partial summary judgment motion in order to consider the supplemental material. The supplemental documents were submitted without an accompanying affidavit.

movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). A dispute is "genuine" if, based on the evidence in the
record, a reasonable jury could return a verdict for the
non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986). A fact is "material" if it might affect the outcome
of the suit. Id. The court will view evidence in the light most
favorable to the non-moving party and "all justifiable inferences
are to be drawn in [that party's] favor." Hunt v. Cromartie, 526
U.S. 541, 552 (1999). Fed. R. Civ. P. 56 "mandates the entry of
summary judgment, after adequate time for discovery and upon
motion, against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at
trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007)
(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

Fed. R. Civ. P. 56(c) further provides that parties
asserting that a fact is genuinely disputed, or cannot be, "must
support the assertion" by citing to the record or by "showing
that the materials cited do not establish the absence or presence
of a genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact." Affidavits or
declarations in support of or opposition to a motion for summary
judgment "must be made on personal knowledge, set out facts that
would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may grant summary judgment, if the motion and supporting papers show the movant is entitled to it, or issue other appropriate orders, including affording a party an opportunity to properly support an assertion of fact. Fed. R. Civ. P. 56(e).

## VI. Discussion

### A. Bodily injury claims

Defendant argues that Plaintiffs cannot sustain their claims for personal injury without expert testimony. (Def. Br. at 17-18.) Plaintiffs have the burden to establish, among other things, actual injury and causation (including, in a toxic tort case, general and specific causation[11]), and Defendants contend that New Jersey "requires expert testimony to establish the medical nexus between the [alleged] exposure and plaintiff's condition." (Id., citing Steele v. Aramark Corp., No. 09-4340, 2012 WL 4103875, at *9 (D.N.J. Sept. 17, 2012), aff'd in part, rev'd

_____

[11] General causation concerns whether the compounds in question are capable of causing disease, whereas specific causation concerns whether the compounds actually caused a disease to the plaintiffs. Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp. 2d 584, 590 (D.N.J. 2002); see also Leake v. United States, 843 F. Supp. 2d 554, 558 (E.D. Pa. 2011) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 752 (3d Cir. 1994)).

<u>in</u> <u>part</u>, --- F. App'x ---, Nos. 12-3942 & 12-4009, 2013 WL 4083268 (3d Cir. July 18, 2013)[12].) Defendant dismisses the expert testimony of Mr. Farrington as "plainly insufficient to carry Plaintiffs' burden," because even if he were qualified to offer such an opinion, which Defendant contests,

> the fact that exposure to TCE or PCE <u>can</u>, . . . at certain concentration levels, affect certain systems does not in any way show (1) that Plaintiffs were exposed to any particular levels of TCE or PCE; (2) that <u>the</u> <u>particular</u> <u>levels</u> to which Plaintiffs were exposed . . . can cause such effects; (3) that

---

[12] After briefing in this matter was complete, the Third Circuit reversed in part and affirmed in part the district court opinion in <u>Steele</u> and remanded for further proceedings. <u>Steele</u>, 2013 WL 4083268, at *6. The Third Circuit held that it was error for the district court to apply the "<u>Sholtis</u> test" of medical causation, referring to <u>Sholtis v. Am. Cyanamid Co.</u>, 238 N.J. Super. 8, 31 (1989), which requires "'(1) factual proof of the plaintiff's frequent, regular and proximate exposure to a defendant's products; and (2) medical and/or scientific proof of a nexus between the exposure and the plaintiff's condition.'" <u>Id.</u> at *3 (quoting a restatement of the <u>Sholtis</u> test in <u>James v.</u> <u>Bessemer Processing Co., Inc.</u>, 155 N.J. 279, 304 (1998)). In <u>Sholtis</u>, the key question was how the plaintiffs, who sought to recover for damages caused by cumulative exposure to asbestos manufactured by many different defendants, could prove causation from exposure to any single defendant's products. <u>Steele</u>, 2013 WL 4083268, at *4. By contrast, in <u>Steele</u>, no "complicated causation problems" existed because the case did "not involve apportioning causation between many defendants who manufactured many different products . . . ." <u>Id.</u> at *4. The <u>Steele</u> plaintiff produced a medical expert whose testimony satisfied the second prong of the test -- a nexus between exposure and the condition. <u>Id.</u> at *3. The Third Circuit concluded that if "toluene caused [plaintiff] Steele's injury there is no difficulty in assigning causation" to the single defendant. <u>Id.</u> at *4.

The Third Circuit did not obviate the requirement that a plaintiff produce evidence that chemical exposure in fact caused injuries, however. Nor did the Third Circuit hold that expert testimony is not needed when the link from low levels of exposure to relatively common symptoms may be proved without an expert.

Plaintiffs have experienced specific health issues that
could potentially be caused by exposure to such levels;
or (4) that any such health issues were, in fact,
caused by Plaintiffs' exposure to TCE or PCE.

(Id. at 21-22.)

Plaintiffs respond that New Jersey law does not require
expert testimony to prove causation, citing cases using
permissive, rather than mandatory, language to that effect. (Pl.
Opp'n at 15.) Plaintiffs suggest they can prove causation "if all
the primary facts can be accurately and intelligibly described to
the jury, and if they . . . are as capable of comprehending the
primary facts and of drawing correct conclusions as are witnesses
possessed of special . . . training, experience, or observation."
(Id. at 16, quoting Wilburn v. Maritrans GP, 139 F.3d 350, 360
(3d Cir. 1998).) Plaintiffs argue that New Jersey courts have
"found the causation requirement satisfied where there was
evidence of prolonged exposure over a period of years with
regular, daily interaction with the harmful product or chemical."
(Id., quoting Steele, 2012 WL 4103875, at *9).) Accordingly,
Plaintiffs assert that the Leese children spent nine years at 5
Victoria Court with exposure "to PCE and TCE on a daily basis . .
. ." (Id. at 16-17.) "The evidence establishing the Leese
children's daily exposure to PCE and TCE, coupled with Mr.
Farrington's expert testimony on vapor intrusion and like
matters, is more than sufficient for a lay jury to infer the
element occurred." (Id. at 17.) Additionally, Plaintiffs attach

19

two exhibits of information from the EPA's website on TCE and PCE stating that exposure "can result in severe acute and chronic effects." (Id. at 18; Pl. Exs. 9 & 10 [Docket Items 97-12 and 97-13].) Plaintiffs next point to the Leese declaration as establishing the ailments suffered by the children. (Pl. Opp'n at 19-20.) Plaintiffs conclude that "[t]he EPA, a federal agency has provided reliable, scientifically sound evidence regarding the effects of exposure to PCE and TCE, and when coupled with the [Leese] testimony . . . along with the medical records of their children, the evidence is sufficient for a lay jury to infer general and specific causation." (Id. at 20.)

As a general proposition, expert testimony is required to demonstrate causation in toxic tort cases. See Sanders v. Rosenberg, No. 06-1406, 2008 WL 1732980, at *3 (D.N.J. Apr. 10, 2008) ("in cases concerning toxic torts such as mold exposure, testimony of an expert is required, in particular with regard to causation") (citing Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999)); Phillips v. Gelpke, 190 N.J. 580, 591 (2007) (citing Rubanick v. Witco Chem. Corp., 225 N.J. Super. 485, 488, 498 (Law Div. 1988), rev'd on other grounds, 242 N.J. Super. 36 (App. Div. 1990), mod. on other grounds, 125 N.J. 421 (1991), for the proposition that "expert testimony [is] required to explain causation in toxic tort wrongful death action[s]"); Sholtis v. Am. Cyanamid Co., 238 N.J. Super. 8, 29 n.16 (App. Div. 1989)

("Expert proof would usually be required to establish, even inferentially, that the exposures caused or exacerbated plaintiffs' eventual injuries."); accord Steele, 2013 WL 4083268, at *4 (opining that medical expert testimony linking chemical exposure to actual injuries would be sufficient to show causation, when the source of the chemical exposure was not in doubt). Toxic tort plaintiffs, alleging bodily injury, proceed at their peril without expert medical testimony.

The Court need not reach the question of whether expert testimony is required to prove causation as a per se rule in all toxic tort cases. In this case, Plaintiffs have failed to make a showing sufficient to establish causation of bodily injury. Evidence that VOCs, in some quantity, can have harmful effects, and that the Leese children suffered ailments and were, or may have been, exposed to some unspecified quantity of TCE and PCE, is an insufficient basis for a reasonable jury to infer causation. See Sanders, 2008 WL 1732980, at *6 n.3 ("the fact that 'mold exposure could cause' plaintiffs medical ailments is not evidence that the specific mold exposure did actually cause plaintiffs their specific medical ailments"). The inferential leap from exposure to VOCs at levels below the current screening levels to the ailments alleged -- lack of appetite, lethargy, neurological and behavioral issues -- is hardly automatic. The specific cause of the Leese children's ailments "does not fall

within the common knowledge of the reasonable juror." <u>Estate of Burnett ex rel. Kelly v. Water's Edge Convalescent Ctr.</u>, No. A-4980-06T2, 2008 WL 2841155, at \*12 (N.J. Super. Ct. App. Div. July 25, 2008) (holding that the cause of bruising and skin tears was beyond the common knowledge of the reasonable juror and granting summary judgment because no expert testimony was presented on causation). Expert medical testimony was necessary and not supplied by Plaintiffs.

The record contains no support for Mr. Farrington's qualifications as a medical expert, making the admissibility of his "medical" opinions doubtful. And Mr. Farrington makes no attempt to state that the ailments of the Leese children, whom he did not examine, were likely caused by TCE and/or PCE. Beyond that, expert testimony on causation "must be couched in terms of reasonable medical probability; opinions as to possibility are inadmissible." <u>Eckert v. Rumsey Park Assocs.</u>, 294 N.J. Super. 46, 50 (App. Div. 1996). "If an expert's testimony does not set forth that the causal connection rises to the level of a reasonable medical probability a court may find that the conclusion is merely a net opinion." <u>Galvin v. Mizuho Med. Corp.</u>, No. A-6450-06T3, 2008 WL 4791023 (N.J. Super. Ct. App. Div. Nov. 5, 2008) (citing <u>Eckert</u>, 294 N.J. Super. at 51, and <u>Buckelew v. Grossbard</u>, 87 N.J. 512, 524 (1981)). Here, there is no record evidence as to (1) the reasonable medical probability that the Leese children's

alleged injuries were caused by TCE and/or PCE; (2) the specific levels of exposure the children had to TCE or PCE; (3) the level of TCE or PCE on the property when the Leese children were infants, i.e., before December 2008; (4) whether exposure to that specific concentration of TCE/PCE is potentially harmful, and (5) no opinion evidence that the compounds were, to a reasonable medical probability, the cause of bodily injury.

Therefore, to the extent Plaintiffs' common law claims rest upon proving Defendant's causation of bodily injury to the Leese children, summary judgment is entered in favor of Defendant. A jury will not be able to rely upon conjecture or speculation, but only upon admissible evidence adduced from competent witnesses. Here, from the admissible evidence, and drawing all reasonable inferences in favor of the Plaintiffs, there is no genuine issue of material fact that would permit a jury to find that these compounds were the likely cause of the children's ailments.

**B. Loss of property value claims**

**i. Evidence in the record**

Defendant likewise argues that claims for loss of property value cannot survive summary judgment without expert testimony "opining that (a) each of Plaintiffs' properties has suffered a loss in value; and (b) the loss in value resulted from the presence of trace amounts of TCE or PCE at the property." (Def. Mot. Br. at 22-23.) Defendant asserts the record contains no

evidence that either property "suffered a loss in value" or that the loss was caused by the VOCs. (Id. at 24.) In support, Defendant cites Player v. Motiva Enters., LLC, 240 F. App'x 513, 522 (3d Cir. 2007), as standing for the fact that summary judgment is appropriate when a proffered valuation expert is excluded, leaving no proof of loss of property value. (Id. at 23.) Defendant contends that an "opinion as to a decrease in value cannot be a mere surmise that because property is contaminated, it logically follows that the value of the property is decreased." (Id., quoting N.J. Transit Corp. v. Mecca & Son Trucking Co., No. A-5643-03T3, 2005 WL 2364811, at *3 (N.J. Super. Ct. App. Div. Sept. 29, 2005)[13].) Defendant also cites United States v. Yeich, 74 F.R.D. 561, 562 (E.D. Pa. 1977), which stated that "facts set forth in affidavits must come within the competency of the individual," and held that a defendant could not compute the value of property in an affidavit without evidence that the defendant was qualified to offer such evidence. (Id.)

Plaintiffs, again, assert that expert testimony is unnecessary if the facts can be accurately and intelligibly described to the jury and the jury is capable of comprehending

---

[13] This quotation from N.J. Transit Corp., an unpublished opinion, is, in turn, a quotation of Finkelstein v. Dep't of Transp., 656 So. 2d 921, 924-25 (Fla. 1995).) The quotation came in the context of the Appellate Division explaining that expert opinion testimony must be supported by evidence.

the facts and of drawing correct conclusions. (Pl. Opp'n at 20, citing Wilburn, 139 F.3d at 360.) Plaintiffs argue that Player does not require an expert, per se, but that the Third Circuit there found the record devoid of any evidence that would allow a jury to find that the plaintiffs suffered a loss of property value. (Id. at 20-21.)

Plaintiffs suggest that the testimony of Ms. Coleman and Ms. Krisanda allows a jury to infer that "it will be virtually impossible to sell" Plaintiffs' homes because of contamination: Krisanda's recommendation that a buyer not purchase a home known to have contamination and Coleman's testimony that she would refuse to sell the house for the Leeses. (Id. at 21.) Plaintiffs add:

> Ms. Krisanda and Ms. Coleman have testified in depositions and will testify at trial as to their personal knowledge, and will provide their opinions with respect to the housing market in Moorestown, New Jersey. More specifically, Krisanda's and Coleman's respective testimonies are based on their perception regarding the ability and willingness to sell the Leese and Winkler properties.

(Id. at 22.)

Plaintiffs maintain that the realtors were properly disclosed as lay witnesses to Defendant in the supplemental discovery responses. (Id. at 22-23.) However, Plaintiffs offer that "in the event Defendant believes these women should be designated as expert witnesses Plaintiffs should be permitted to do so as no prejudice will result to the Defendant." (Id. at 23.)

25

Plaintiffs point out that Defendant was aware of the testimony of the realtors and conducted two depositions each of Ms. Coleman and Ms. Krisanda. (Id.) Plaintiffs state they have consented to a 60-day extension for Defendant to produce expert reports in rebuttal. (Id.)

In reply, Defendant reasserts that "expert testimony is generally needed to determine the market value of real property." (Reply at 12, quoting Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001).) Defendant faults Plaintiffs for not citing any "exception to this rule." (Id.) The fact that Plaintiffs rely solely on lay testimony, Defendant suggests, is fatal to loss-of-value claims. (Id. at 13.) Defendant also argues that the proffered testimony from Ms. Coleman and Ms. Krisanda "would not be lay testimony" because Plaintiffs "do not and cannot allege that Krisanda or Coleman have personally tried to sell Plaintiffs' property. Indeed, neither the Leese property nor the Winkler property has ever been put on the market at any point after the environmental testing at issue." (Id.) Defendants suggest that an opinion on the value of property based on specialized experience and analysis of comparative sales is "quintessentially expert testimony." (Id.)

At oral argument, Ms. LaVan, Plaintiffs' counsel, suggested that the a jury could infer that the value of the properties was zero, because the properties were "worth nothing" to the

Plaintiffs, subjectively. Setting aside the questionable nature
of that assertion, arguments made by counsel do not constitute
evidence capable of defeating summary judgment. Plaintiffs also
have submitted to the Court a Burlington County tax assessment on
their property, showing that a tax assessor recently lowered the
assessment of the Leese property from $533,600 to $285,000.[14] Ms.
LaVan admitted at oral argument that the Leeses were not in
possession of a written opinion from the tax assessor stating the
reasons for the reduction, although Ms. LaVan asserted that the
appeal was taken for environmental reasons. Significantly,
however, Ms. LaVan did not move to enter the tax assessment, or
any documents related to the appeal, into evidence. Ms. LaVan
eventually did submit the documents to the Court [Docket Item
105], but without an affidavit attesting to their validity and
without an accompanying motion. Therefore, the supplemental
materials are not evidence. See In re Mezvinksy, 265 B.R. 681,
693 n.19 (Bankr. E.D. Pa. 2001) ("Documents attached to a summary
judgment brief, absent affidavit support attesting to their
validity, are not evidence.")(citing Berk v. Ascott Inv. Corp.,
759 F. Supp. 245, 249 (E.D. Pa. 1991)).

Defendants are correct that the current record does not
raise a genuine issue of material fact as to a diminution of

---

[14] No similar documentation was provided for the Winkler
property.

property value caused by contamination, because the admissible evidence supplied by Plaintiffs does not permit a reasonable jury to infer a valuation, let alone causation. Despite Plaintiffs' assertions, the record does not contain any opinions -- expert or otherwise -- about the current value of the properties, nor any opinion linking a decrease in value to the contamination as opposed to other market factors. Both realtors unequivocally stated that they have not formed an opinion as to the value of the Plaintiffs' properties. There simply is no record evidence as to the current values of the properties. The passages of depositions cited by Plaintiffs reveal only that Ms. Krisanda advised a buyer not to buy a wholly different property because of contamination, and Ms. Coleman did not consider it worth her time to list the Leese property for the Plaintiffs, not that she was asked. Even Coleman, however, acknowledges that "there's a buyer for everything," indicating at least some value in the properties, and contradicting Plaintiffs' position that the properties are valueless. (Coleman Dep. [Pl. Ex. 20] at 183:11-12.) Plaintiffs have never placed their properties on the market since the environmental testing began in 2008, and have not produced any expert testimony or any other evidence from which a jury could infer that the VOCs caused a diminution of property value.

A reasonable jury could not infer from this existing record

that the properties have diminished in value because of the contamination. Therefore, unless Plaintiffs are permitted to supplement the record, discussed below, partial summary judgment will be entered in favor of Defendant.

To be clear, the Court is not holding that expert opinion testimony is always required to establish a loss of property value from contamination. For example, if these properties had been marketed and sold in arm's length transactions in the open market to buyers who were aware of all material facts of the alleged contamination, those facts, rather than opinion testimony, could be found to establish the current market values, and the buyers could testify as to the degrees, if any, to which the alleged contamination depressed the prices. In contrast, the realtor witnesses presently have no particular knowledge of these properties, the current values, or the degrees to which those values were depressed from the market value of comparable non-contaminated properties in the local real estate market. In this case, however, no one, not even the realtors, has expressed an admissible opinion on the value of the Plaintiffs' properties.[15]

---

[15] Any testimony from lay witnesses about the value of the properties would not be admissible under Fed. R. Evid. 701, as opinions are not based on the witnesses' perception or personal knowledge; neither has attempted to market either of the properties since the environmental testing began. Absent an actual or attempted transaction, the effect of contamination on the properties and the market value of homes in the area would appear to be within the "specialized knowledge within the scope of Rule 702," which addresses expert witnesses. Fed. R. Evid.

## ii. Qualifying a new expert

Two questions remain: whether Plaintiffs may qualify their realtor witnesses as experts at this time, and whether Plaintiffs may be given additional time to retain a new appraiser, qualify the appraiser as an expert and supplement the record with a new expert report on the value of the properties.

Defendant opposes qualifying the two realtors as experts. (Def. Reply at 15 n.8.) Defendant contends that neither realtor is qualified to render an opinion on the effect of alleged contamination and neither has formulated such an opinion. (Id.)

The Court agrees with Defendant that Ms. Coleman and Ms. Krisanda may not be qualified as experts at this point, and therefore their opinions regarding diminished property values are inadmissible and will not be considered. Both witnesses have been subjected to two rounds of depositions, and that testimony revealed that neither has the necessary experience or specialized knowledge to opine about the diminution of value to contaminated properties.[16] There is no good cause to permit Plaintiffs a third

_____

701(c).

[16] It would be one thing to permit Plaintiffs to qualify these realtors as experts late, if the realtors' testimony, on its face, established the injury element and Plaintiffs simply had neglected to qualify the witnesses as experts. It would not be unfair to permit these realtors to formalize belated opinions that they had reached, based upon a reliable methodology and for which they were competent, into an expert report that could comply with Rule 26(a)(2) and gain admissibility as expert opinion testimony under Fed. R. Evid. 703, if these realtors had,

chance with these witnesses. Plaintiffs' request to qualify Ms. Coleman and Ms. Krisanda will be denied.

Defendant urges the Court not to allow Plaintiffs to submit any other untimely expert report. (Def. Supp. Br. [Docket Item 106].) Defendant argues convincingly that Plaintiff cannot satisfy the requirements of Fed. R. Civ. P. 56(d), which typically is employed when a nonmovant shows "it cannot present facts essential to justify its opposition" and needs additional time. Fed. R. Civ. P. 56(d). The Court agrees that Plaintiffs have not even attempted to invoke Rule 56(d) or explain their lack of diligence in producing an expert valuation. Defendant further argues that the tax assessment is not "new evidence" to support Plaintiffs' claims and not enough grounds to permit a late expert report that Plaintiffs voluntarily declined to produce. (Def. Supp. Br. at 7.) The Court agrees that the tax assessment itself is not new evidence and is not part of the record.

The Court, however, will permit Plaintiffs one final chance to support their assertion of fact that the properties have lost value because of contamination. Rule 56(e)(1), Fed. R. Civ. P., provides that "[i]f a party fails to properly support an

---

for example, formulated otherwise admissible expert opinions about the loss in value of the property attributable to the alleged contamination. But such is not the case here, where the witnesses have expressed no opinions to formalize.

assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact[.]" The 2010 Advisory Committee Notes to subdivision (e) state that

> summary judgment cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements. Nor should it be denied by default even if the movant completely fails to reply to a nonmovant's response. Before deciding on other possible action, subdivision (e)(1) recognizes that a court may afford an opportunity to properly support or address the fact. In many circumstances this opportunity will be the court's preferred first step.

FEDERAL CIVIL JUDICIAL PROCEDURE & RULES 258 (Thomson Reuters, 2013 Revised Ed.); see also Mulrooney v. Corp. Serv. Co., No. 12-163, 2013 WL 1246769, at *16 (D. Del. Mar. 27, 2013) (invoking Rule 56(e)(1) and granting the plaintiff "another opportunity to properly support his factual assertions" and citing other district court opinions ordering the same). Moreover, the Third Circuit has indicated that a motion to supplement the summary judgment record may be granted when the new material is not merely cumulative of evidence already in the record and if the new material creates a new question of material fact that may impact the ruling on the pending motion for summary judgment. Accord Edwards v. Pa. Tpk. Comm'n, 80 F. App'x 261, 265 (3d Cir. 2003) (affirming the district court's denial of the plaintiff's motion to supplement the summary judgment record because the evidence "was merely corroborative of evidence already on the

record and would not have altered the decision of the district court"); <u>Jackson v. Ivens</u>, No. 01-555, 2010 WL 2802279, at *1 (D. Del. July 13, 2010) (denying a motion to supplement the record for the same reasons).

The Court will grant Plaintiffs 30 days in which to supplement the record with an expert report that expresses an opinion as to whether the presence of TCE and/or PCE has caused a diminution in the value of their properties and an opinion quantifying the loss in property value, using reliable methodology and for which the expert is competent.[17] <u>See</u> Fed. R. Civ. P. (a)(2); Fed. R. Evid. 703. Any expert must have suitable qualifications through education, training or experience in the specialized field of evaluation of residential property impacted by environmental pollution, and the expert must employ a reliable methodology in expressing an opinion that fits the circumstances of the properties in this case.

The Court's discretion to permit Plaintiffs to supplement the record on summary judgment in this case pursuant to Rule 56(e)(1) is warranted in this case for four reasons. First, the present motion is for partial summary judgment only, meaning that litigation between these parties will continue regardless of the motion's outcome. The parties currently are planning to conduct

---

[17] Additional extensions of time will not be granted to Plaintiffs.

additional expert discovery, pending the resolution of this motion. In light of the fact that the parties likely face many additional months of litigation addressing the other remaining issues, another 30 days for Plaintiffs to submit an expert report will not lead to undue delay the resolution of this matter. Second, based on the material presently before the Court, it is highly probable that Plaintiffs could create a genuine issue of material fact as to the loss of property value with an admissible expert report. Plaintiffs' assertion of diminished property value is not fanciful or mere speculation. Plaintiffs have supplied the Court -- albeit, to date, not in admissible form -- with documents consistent with the contention that the Leeses, at least, have suffered a loss related to conditions emanating from Lockheed Martin's property across the street, as reflected in their reduced tax assessment allegedly due to the contamination. The testimony by the realtor witnesses further gives the impression that contaminated properties carry a stigma that affects their value. Common sense likewise instructs that residential properties that contain potentially harmful chemicals would be less desirable, and thus, less valuable, than non-contaminated properties in the eyes of a prospective buyer or tenant -- although the burden remains on Plaintiffs to prove that intuition with admissible evidence. While none of the material described above is evidence sufficient to defeat summary

judgment, it is enough to convince the Court that granting summary judgment at this time would foreclose a possibly substantial and meritorious claim. Third, an expert opinion on property value will not inject a new or surprising issue or claim into the case, thereby prejudicing Defendant.[18] Fourth, Defendant has not proffered an expert of its own to defend Plaintiffs' diminished property value claim, so Defendant will not be prejudiced by having an expert revisit the same subject; indeed, if Plaintiffs serve a timely expert's report, Defendant will have a full opportunity to retain its own expert if it chooses to do so.

Plaintiffs' lack of diligence ought to have its consequences, however, because Plaintiffs did not retain a suitable expert or serve a report in the time required by the earlier scheduling orders in this case and prior to the start of the summary judgment motion practice. Therefore, to minimize prejudice to Defendant, who has already deposed the Plaintiffs' two realtor witnesses twice, the Court will require Plaintiffs,

---

[18] Plaintiffs have not requested the opportunity to submit an expert report on medical causation. Therefore, the opportunity to supplement the record will be granted only as to the diminution of property value. Furthermore, with respect to medical causation, there is a distinct and palpable lack of evidence linking any medical condition to the trace levels of chemicals that are sometimes detected. It would be futile to further enlarge the opportunity for expert testimony supporting medical causation when the present record is so bereft of a basis.

at their own expense, to furnish their expert for deposition by
Defendant and to pay their expert's reasonable fee for up to four
hours of such deposition; Defendant is responsible for
reimbursing the expert's fee beyond four hours of deposition
testimony, for up to three additional hours; and the total time
for this deposition is limited to one day of not more than seven
hours unless counsel otherwise agree.

The Court therefore defers decision, pursuant to Rule
56(e)(1), upon Defendant's motion for partial summary judgment as
it pertains to the injury of lost property value, pending
Plaintiffs' submission of a new expert report. In the event
Plaintiffs fail to supplement the record by submitting such
report within thirty (30) days of the entry of this Order, the
Court will grant partial summary judgment for Defendant upon the
lost property value damages claims of these Plaintiffs.

If Plaintiffs timely submit such an expert's report,
Defendant will have the opportunity to rebut same within thirty
(30) days thereafter with their own expert's report accompanied
by a curriculum vitae.

### V. Conclusion

Defendant is entitled to partial summary judgment to the
extent Plaintiffs allege bodily injury to the Leese children.
Plaintiffs' request to qualify Ms. Coleman and Ms. Krisanda as
expert witnesses is denied. Defendant's motion, as it pertains to

Plaintiffs' diminished property value, is temporarily deferred, and Plaintiffs will be granted 30 days in which to furnish the Court, and opposing counsel, with an expert report expressing an opinion and quantum of diminished property value for each residential property, as well as causation thereof. The reimbursement of the expert's fee for the first four hours of a deposition is shifted to Plaintiffs. If no such expert's report is timely submitted, the Court will enter partial summary judgment for Defendant upon Plaintiffs' claims for damages for diminished property value. An accompanying Order will be entered.

**September 30, 2013**
Date

**s/ Jerome B. Simandle**
Jerome B. Simandle
Chief U.S. District Judge